IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY C. WALL,                                                    Civil No. 06-882-CL

        Plaintiff,                                      REPORT AND RECOMMENDATION

          v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

        Defendant.


CLARKE, Magistrate Judge.

      Plaintiff Jeffrey C. Wall brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. § 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's application for disability insurance

benefits.  For the several reasons set forth below, the decision of the Commissioner

should be reversed and remanded for further administrative proceedings.

## **BACKGROUND**

      Plaintiff applied for disability insurance benefits alleging disability commencing March

16, 2002.  His applications  were denied.  Plaintiff requested a hearing, which was held

before an Administrative Law Judge (ALJ) on October 20, 2004.  Plaintiff, represented by

counsel, appeared and testified, as did a lay witnesses, a medical expert, and a vocational expert.  On May 9, 2005, the ALJ rendered an adverse decision, and the Appeals Council denied plaintiff's request for review.

At the time of the hearing and the ALJ's decision, plaintiff was fifty-five years old. Plaintiff has a high school education and three years of college.  He has relevant past work experience as a concrete truck dispatcher.  Plaintiff alleges disability as of March 16, 2002, based upon anxiety disorders, particularly post traumatic stress disorder (PTSD).  The relevant medical evidence is discussed below.

## **STANDARDS**

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole, and  weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but

any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

3 - REPORT AND RECOMMENDATION

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period under review. (Tr. 15, 21.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's PTSD and drug and alcohol substance abuse are severe impairments. (Tr. 16, 21.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal any of the listed impairments. (Tr. 16, 21.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the

4 - REPORT AND RECOMMENDATION

claimant "not disabled."  Otherwise, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week.  Social Security Ruling (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the ALJ found that plaintiff retains an RFC "which is not limited by any exertional limitations [but] [n]on-exertional limitations include the need for simple, routine, repetitive work and only occasional interaction with the public and coworkers." (Tr. 19, 21.)  The ALJ found that plaintiff could not perform his past relevant work.  (Tr. 21.)  Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the claimant is deemed disabled.  Here, the ALJ found that plaintiff retained the residual functional capacity to perform a significant number of other jobs existing in the national economy.  (Tr. 21, 22.)  Therefore, the ALJ found that plaintiff was not under a disability.  (Tr. 21, 22.)

## **DISCUSSION**

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and because it is based on the application of improper

legal standards.   Plaintiff argues that the ALJ erred by (1) failing to legitimately reject portions of medical opinions which support plaintiff's claim of disability; (2) failing to fully develop the record; (3) improperly dismissing plaintiff's testimony;   and (4) improperly rejecting lay witness testimony.   He contends that, because of these errors, the hypothetical posed to the vocational expert was incomplete and lacked sufficient evidentiary value.

**Development of the record - Veterans Administration disability rating decision**

Plaintiff contends that the ALJ failed to fully develop the record by not obtaining the disability determination from the Veterans Administration (VA) and, therefore, he indisputably failed to give that decision great weight as required by McCartey v. Massanari, 298 F.3d 1072 (9th Cir. 2002).  Defendant responds that the ALJ gave proper weight to the VA disability determination.

In the Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  Such a duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

The Ninth Circuit in McCartey, 298 F.3d at 1076, agreeing with other circuits, held that, "although a VA rating of disability does not necessarily compel the SSA to reach an identical result, the ALJ must consider the VA's finding in reaching his decision."  (Citing 20 C.F.R. § 404.1504.)  The court held that an ALJ must give "great weight" to a VA

determination of disability.  The court discussed the "marked similarity" between the two federal disability programs, particularly noting that, "The  VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework."  <u>McCartey</u>, 298 F.3d at 1076.  However, because the criteria for determining disability are not identical, the ALJ may give less weight to a VA disability rating if "persuasive, specific, and valid reasons" are given which are supported by the record.  <u>Id.</u>

Included in the record is a letter to plaintiff from the VA dated June 20, 2002, which states that the VA granted entitlement to the 100% rate effective March 25, 2002, because of plaintiff's inability to work due to service connected disability or disabilities.  (Tr. 139.)  The letter indicates that a "Rating Decision" was enclosed, along with certain VA forms.  (Tr. 140.)  The letter states specifically:

> We have enclosed a copy of your Rating Decision for your review.  It provides a detailed explanation of our decision, the evidence considered and the reasons for our decision.  You can find the decision discussed in the section titled "Decision."  The evidence we considered is discussed in the section titled "Evidence."  The reasons for our decision can be found in the portion of the rating titled "Reasons for Decision" or "Reasons and Bases."

(Tr. 139.)

In his decision, the ALJ refers to the fact that plaintiff was approved for disability benefits from the VA at the time he alleges his disability began, (Tr. 15); in his discussion of the September 2000 evaluation by  Gary P. Monkarsh, Ph.D., the ALJ notes that plaintiff had a 50% disability due to PTSD at that time, (Tr. 18); and refers to the PTSD diagnosis and medical records, (Tr. 19).  However, nowhere in his decision is it apparent that the ALJ gave the VA's rating of disability itself any consideration.  It is noteworthy that the 100%

rate granted by the VA effective March 25, 2002, is not mentioned by the ALJ in his decision.[1] There is no analysis of any VA disability determination. Here, the ALJ found that plaintiff was not disabled.  Therefore, if the VA disability determination was, in fact, considered by the ALJ, he would have had to set forth "persuasive, specific, valid reasons" for not giving the determination the "great weight" to which it is entitled.  There are no reasons given in the decision for rejecting the VA's determination.

Further, because the record does not include the VA "Rating Decision" itself, which included sections entitled, "Decision," "Evidence," and "Reasons for Decision" or "Reasons and Bases," (see Tr. 138-39), it is not clear that the evidence considered by the ALJ in making the social security disability decision is the same evidence that was considered by the VA in making its rating decision in 2002.  The ALJ must consider all medical evidence which bears on the disability determination.  See SSR 96-5p.

The ALJ did not develop the record by obtaining the VA rating decision.  The Court finds that the ALJ erred in not giving the VA rating decision the great weight to which it is entitled.

**Physicians' Opinions**

Plaintiff asserts that the ALJ failed to legitimately reject Dr. Wolf's opinion as to his symptoms; the ALJ offered unsupported and therefore illegitimate reasons for rejecting

---

[1]    The June 20, 2002, letter from the VA  also states that, "Even though you are now being compensated at the total rate, your overall or combined rating remains at 70%." (Tr. 139.)  Mark Wolf, M.D., stated in his report following his October 2002 examination of plaintiff that a social work services progress note dated August 1, 2002, noted that plaintiff was "70% service connected for post-traumatic stress disorder . . . ."  (Tr. 168; see Tr. 675, 679 (Dec. 2004 Gostnell Report).)

symptoms stated by Dr. Monkarsh, and failed to legitimately reject his disabling opinion; and the ALJ failed to deal with and assess certain of Dr. Gostnell's conclusions and he did not legitimately reject his opinion.  Plaintiff also asserts that, because the ALJ did not legitimately reject the opinion of Dr. Monkarsh, it must be credited.  Plaintiff contends that because of these failures, the hypothetical posed to the vocational expert was incomplete.  Defendant contends that the ALJ properly evaluated the medical evidence and his RFC finding properly summarized plaintiff's functional limitations.

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant.  20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  A treating physician is one who is employed to cure.  Magallanes, 881 F.2d at 751.  His opinion is given more weight because he has a greater opportunity to know and observe the patient.  Id. Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record.  20 C.F.R. §§ 404.1527(d)(2), 416.926(d)(2).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R.

§§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762. Further, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830.

Gary Monkarsh, Ph.D., conducted a VA "Comp and Pensions" (C&P) examination of plaintiff in September 2000.[2] Plaintiff told Dr. Monkarsh that, since his last evaluation, his problems could be magnified 100 times. He complained that he had nightmares every five to seven nights and slept only two hours at a time. He reported that he woke up, on

---

[2] The date of September 22, 2004, appears in the upper right corner of each page of Dr. Monkarsh's report (and twice on the first page of the report). The 2004 date is cited by plaintiff and by Dr. Gostnell. However, a review of the report shows that Dr. Monkarsh examined plaintiff in September of 2000.

10 - REPORT AND RECOMMENDATION

average, five times a night to walk around, needing to make sure everything was secure so he could go back to sleep.  He stated that he was having problems on the job with interpersonal relationships; and that his patience was to the point where he was "going to break down." (Tr. 488.)  Plaintiff reported that he'd stopped communicating with three or four of his friends because he couldn't be around them due to their talk about Vietnam. Plaintiff further stated that he avoided crowds and that he thought about the war every minute of every day.  Plaintiff stated that he suffered from low self esteem, low energy levels, lack of motivation, lack of interest in pleasurable activities, sleep disturbance, appetite problems, and episodic suicidal ideation.  He also complained of anger problems which had led to a number of fights.  He stated that he had only one friend, a fellow Marine, and he had only one friend because he did not trust others.  To pass the time, plaintiff "excessively" drank alcohol and occasionally worked in the yard.  (Tr. 489.)

Plaintiff's medical history recorded by Dr. Monkarsh included a reference to a March 1998 C&P evaluation which indicated that plaintiff was suffering from increasing symptoms of PTSD with moderate to serious impairment in social functioning and moderate impairment in occupational functioning.  He also noted a PTSD evaluation in February 1996 which noted plaintiff's history of substance use and PTSD, "chronic, moderate to moderately severely disabling."  Dr. Monkarsh noted the May 1998 VA rating decision of 50% for PTSD.  (Tr. 488.)  Dr. Monkarsh's mental status exam showed that plaintiff complained of suffering from chronically dysphoric, irritable and anxious mood; and that he suffered from suicidal ideation at least every two months.  Dr. Monkarsh stated that

there was no evidence of delusions or of significant cognitive impairment. He also stated that plaintiff displayed below-average insight into the nature of his condition and how his alcoholism exacerbated his symptoms.

In his discussion, Dr. Monkarsh found that plaintiff met the criteria for chronic, moderate severe PTSD; and secondary symptoms of depression which warranted a diagnosis of dysthymic disorder. He found that plaintiff's PTSD symptoms included the following:

> He was exposed to a number of life threatening events in Vietnam in which he responded with feelings of helplessness and horror. He persistently re-experiences these events. He persistently avoids stimuli associated with these events and has numbing of general responsiveness. He suffers from persistent symptoms of increased arousal. The veteran's secondary dysthymic disorder symptoms include chronic dysphoric mood, low energy level, sleep disturbance, low self esteem, appetite problems, episodic suicidal ideation and lack of interest in pleasurable activities.

(Tr. 489-90.) Dr. Monkarsh found that plaintiff appeared to suffer from moderate to severe social and emotional impairment and "at least" moderate industrial impairment. (Tr. 490.) He found that plaintiff would benefit from intensive psychotherapy and a psychiatric evaluation to reduce his symptoms of PTSD and depression. He also found that plaintiff "appears to be employable." (Tr. 490.) Included in his DSM-IV diagnosis, Dr. Monkarsh

assessed plaintiff's global assessment of functioning (GAF) as 50-51,[3] moderate to severe symptoms of PTSD with secondary symptoms of depression.

Other than noting Dr. Monkarsh's diagnoses of PTSD chronic and moderate to severe and secondary dysthymic disorder, and alcohol dependence; and that Dr. Monkarsh had stated that plaintiff appears to be employable, the ALJ did not refer to any of Dr. Monkarsh's findings and opinions.  For example, Dr. Monkarsh set out plaintiff's symptoms of PTSD, which included persistent re-experiencing of the life threatening events in Vietnam, persistent avoidance of stimuli associated with these events, and persistent symptoms of increased arousal; and plaintiff's symptoms of his dysthymic disorder which included chronic dysphoric mood, sleep disturbance, low self-esteem, and episodic suicidal ideation, among others.  Dr. Monkarsh opined that plaintiff suffered moderate to severe social and emotional impairment, and at least moderate industrial impairment.  He also assessed a GAF of 50-51, moderate to severe symptoms.  These opinions are relevant to a disability determination.  The ALJ offered no reasons to disregard these opinions of Dr. Monkarsh, an examining doctor.

In October 2002, plaintiff was examined by Mark Wolf, M.D.  Plaintiff reported that he had spent the last thirty years drinking alcohol primarily due to self-medicating his

---

[3]  A GAF of 41 to 50 means: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  A GAF of 51 to 60 means:  **"Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)."   American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) at 32.

PTSD.  He described nightmares that kept him "go[ing] back" to Vietnam.  (Tr. 169.)  Dr. Wolf stated:  "He has intrusive thoughts on a daily basis, multiple times per day with numerous stimuli."  (Tr. 169.)  Plaintiff reported that rain reminds him of Vietnam, and if he is near a river, he is constantly surveying the river to see if anyone is trying to kill him. He stated that he did perimeter checks around his house five times before going to sleep and he slept with a loaded gun every night.  Plaintiff stated that since he'd been off alcohol the past few months his PTSD symptoms were about the same.  Dr. Wolf stated in his report that plaintiff stated he was able to control his emotions, and that he could "function, do anything" as long as he didn't get upset, but if he got upset, he decompensated.  (Tr. 169.)

In his record review, Dr. Wolf noted that plaintiff was 70% service connected for PTSD without any prior treatment.  Dr. Wolf's mental status examination of plaintiff showed that plaintiff denied any suicidal or homicidal ideation, and there was no evidence of delusions.  As to activities of daily living, plaintiff was able to do anything "'as long as I don't get upset.'"  (Tr. 172.)  He was able to shop, run errands, and he drove occasionally. He did not have any hobbies, but had gone golfing for the first time after being given a set of golf clubs.  As to plaintiff's social functioning, plaintiff responded to the question of how he gets along with people:  "'As long as they are not aggressive towards me I'm fine.'"  (Tr. 172.) Dr. Wolf found that plaintiff's concentration was good, his persistence was good, and his pace appeared normal.

In his discussion/prognosis, Dr. Wolf found that plaintiff's symptoms were consistent with PTSD.  He found that his PTSD was treatable but noted that plaintiff was not receiving treatment.  He found it was possible that plaintiff had been self-medicating with alcohol for the past thirty years.   Dr. Wolf opined that plaintiff's likelihood of recovery was poor without treatment, but was fair with treatment.  He found that plaintiff's condition would likely stay the same the next twelve months without treatment, but could "possibly" improve with treatment over the next twelve months.  (Tr. 173.)

In his decision, the ALJ referenced  Dr. Wolf's findings as follows:

Despite his claim of disability, Dr. Wolf notes that the claimant had normal responses and cognition; continued to engage in activities such as shopping and running errand[s]; and reported going golfing for the first time on the previous weekend.   Dr. Wolf stated that the claimant has symptoms consistent with PTSD, but is on no medication and is receiving no therapy or treatment, but instead has a long history of alcohol abuse and continues to use marijuana several times a week.

(Tr. 18.)  While noting Dr. Wolf's finding that plaintiff's symptoms were consistent with PTSD, the ALJ did not consider those symptoms recounted in Dr. Wolf's report.  He did not consider Dr. Wolf's opinion that, without treatment, plaintiff would likely stay the same, and with treatment, plaintiff could "possibly" improve in the next twelve months; or that, even with treatment, plaintiff's likelihood of recovery was "fair," and without treatment, it was "poor."  The ALJ gives no reasons for disregarding these opinions of Dr. Wolf's.

Following plaintiff's hearing before the ALJ, plaintiff underwent a neuropsychological screening examination in December 2004 by David Gostnell, Ph.D., a clinical neuropsychologist.   Dr. Gostnell remarked in his report that plaintiff's "tangential,

digressive, and verbose pattern of discourse precluded a coherent presentation of symptoms and complaints." (Tr. 672.) Plaintiff complained of a fifteen minute attention span ever since his Vietnam experience, and stated that he had to continually force himself to concentrate. He stated that he had undergone a "'personality change'" since May 4, 2004,[4] referring to "an onslaught of new memories about past traumas, 'paranoid' thoughts and feelings, and more 'subdued' and avoidant behavior patterns." (Tr. 673.) Plaintiff stated that he was less likely to openly express his opinions so as to avoid conflict, escalation of behavior, and possible violent reactions. He told Dr. Gostnell that he stopped working "after 'an outsider, half my age and didn't know the business' changed the schedules." (Tr. 674.) Plaintiff stated his household responsibilities included tending the wood stove fire and washing dishes. He occasionally prepared meals and was capable of driving short distances. He stated he avoided shopping because he was "'too compulsive'" about his purchases and would rather avoid crowds in stores. (Tr. 675.) Dr. Gostnell noted that plaintiff was receiving a 100% service connected disability from the VA.

As to plaintiff's mental status exam, Dr. Gostnell noted that he was "very difficult to interview because of his tangential, digressive, and excessively elaborative presentation." (Tr. 676.) Dr. Gostnell noted that, as to the formal testing conducted, "the results provide a reliable estimate of his current cognitive and intellectual abilities." (Tr. 676.) In summarizing plaintiff's formal testing, Dr. Gostnell found that plaintiff's personality assessment testing results were invalid. Dr. Gostnell stated:

_____

[4]    The record indicates that May 4, 2004, is the date that plaintiff stopped drinking. (Tr. 697-98.)

His validity scale pattern reflects a combination of exaggerated psychological problems and defensiveness about personal failures and shortcomings. There is a strong indication of negative impression management, i.e., consistent endorsement of items which resulted in an especially negative or pathological self-portrayal. This pattern does not necessarily reflect deliberate exaggeration, but does involve substantial distortion of his clinical profile.

(Tr. 678.) He went on to find that,

Even taking into account the consequences of Mr. Wall's response bias, his clinical scale elevations reflect some core problems which may be genuine and valid, including interpersonal distress, low frustration tolerance, compulsive and rigid behavioral patterns, hostility, bitterness, and prolonged consequences of past traumas. This pattern, in fact, is consistent with Mr. Wall's self-presentation and psychiatric history.

(Tr. 678-79.)

In his summary and conclusions, Dr. Gostnell found that plaintiff's intellectual and neurocognitive testing results produced no evidence of significant impairment in contrast to his interview behavior which was tangential, disorganized, and compulsive. Dr. Gostnell stated: "This disparity suggests that his conversational pattern reflects characterological or psychiatric rather than cognitive factors. His personality assessment, in which there is clearly an element of exaggeration, also provided substantial evidence of paranoid, compulsive, and hostile personality characteristics, and is consistent with his diagnosis of PTSD. Dr. Gostnell remarked that plaintiff had had continuous employment until March 2002, "when he resigned because of his dissatisfaction with a change in management style." (Tr. 679.) He found that, "This event also appears consistent with the personality features revealed in the interview and personality testing, reflecting his rigidity, compulsiveness, and paranoid thinking." (Tr. 679.) Dr. Gostnell found that, given

17 - REPORT AND RECOMMENDATION

plaintiff's neurocognitive status and intellectual capacities, plaintiff was a reasonable candidate for mental health services, with a "fair" prognosis of benefitting from treatment. (Tr. 679.)

Dr. Gostnell completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), in which he found that plaintiff was moderately limited in the work-related mental activities of: interacting appropriately with the public, with supervisors, and with co-workers; and in responding appropriately to work pressures in a usual work setting and to changes in a routine work setting. He further noted that, with abstinence from alcohol, plaintiff could suffer a possible increase in PTSD symptoms. (Tr. 686.)

The ALJ set forth many of Dr. Gostnell's statements in his report. Notably, however, in setting forth Dr. Gostnell's findings, the ALJ misstated his findings as follows: "[Dr. Gostnell] explained that the claimant's exaggerated psychological problems and defensiveness about personal failures and shortcomings were a strong indication of negative impression management." (Tr. 19.) As stated, supra, Dr. Gostnell, in fact, stated in his report: "His validity scale pattern reflects a combination of exaggerated psychological problems and defensiveness about personal failures and shortcomings. There is a strong indication of negative impression management, i.e., consistent endorsement of items which resulted in an especially negative or pathological self-portrayal." (Tr. 678.) Dr. Gostnell refers to two different concepts in these statements; he explains that his finding of negative impression management means that plaintiff consistently endorsed items in the personality assessment testing which resulted in a

negative self-portrayal.  If anything, what the ALJ set forth is the reverse of Dr. Gostnell's statement of his findings.

However, the ALJ did not refer to many of Dr. Gostnell's findings which are relevant to a disability determination.  The ALJ did not reference Dr. Gostnell's finding that, even taking into account plaintiff's response bias, plaintiff's clinical scale elevations reflected some "core problems" which may be genuine and valid including interpersonal distress, low frustration tolerance, compulsive and rigid behavioral patterns, hostility, bitterness, and prolonged consequences of past traumas, nor his finding that this pattern was, in fact, consistent with plaintiff's self-presentation and psychiatric history.  The ALJ did not refer to Dr. Gostnell's finding that the disparity between plaintiff's intellectual and neurocognitive testing results of no significant impairment, and plaintiff's interview behavior, reflected characterological or psychiatric factors rather than cognitive factors.  The ALJ did not refer to Dr. Gostnell's finding that plaintiff's personality assessment provided "substantial evidence" of paranoid, compulsive, and hostile personality characteristics, which was consistent with his PTSD diagnosis.  Dr. Gostnell also found that plaintiff's stopping work was consistent with personality features revealed in the interview and personality testing, which reflected plaintiff's rigidity, compulsiveness, and paranoid thinking, which was not referenced by the ALJ.   The ALJ offered no reasons for disregarding these opinions of Dr. Gostnell.

Further, the Court notes that there is some ambiguity as to whether the ALJ included the opinions of the medical expert and nonexamining doctors in his RFC posed to

the vocational expert.  The ALJ apparently credited the opinion of the medical expert, Dr. Sally Clayton.  The ALJ set forth her opinion as follows:  Dr. Clayton "stated that these mental impairments to cause the claimant [sic] mild restriction of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace . . . ."  (Tr. 16.)  However, it is not clear that these limitations were included in the RFC formulated by the ALJ and posed to the vocational expert in the hypothetical.    Moreover, the record includes the opinions of two nonexamining doctors, but their opinions were not addressed by the ALJ in his decision. Paul Rethinger, Ph.D., found moderate limitations in certain mental activities, and he opined that plaintiff would do best at jobs not requiring frequent supervision, he should not be required to work in close coordination with others, and he should not be required to have direct public contact.  (Tr. 149-67.)   In April 2003, Frank Lahman, Ph.D., found moderate limitations in certain mental activities, and he opined that plaintiff needed a work setting that did not require frequent or close contact with the public or co-workers.  (Tr. 461-78.)

Overall, it appears to the Court that, as contended by plaintiff, the ALJ picked and chose certain portions of the doctors' reports while not discussing those portions that supported the severity of plaintiff's PTSD symptoms and resulting limitations.   In disregarding certain of the doctors' findings and opinions, which were generally consistent regarding plaintiff's PTSD, the ALJ failed to give the required reasons for doing so. Accordingly, the ALJ erred in his treatment of the opinions of Dr. Monkarsh, Dr. Wolf, and

Dr. Gostnell.  Further, it is not clear that the ALJ considered the opinions of nonexamining doctors included in the record.

**Plaintiff's Testimony**

Plaintiff contends that the ALJ improperly discredited his testimony and dismissed his limitations for a single reason which was less than clear and convincing.  Defendant responds that the ALJ properly found plaintiff not entirely credible.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis.  Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  The first stage is the Cotton test.  Cotton, 799 F.2d 1403.  Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.  In addition, there must be no evidence of malingering.

Plaintiff has produced objective evidence of impairments that could reasonably be expected to produce some degree of symptoms resulting in limitations.  (Tr. 16, 21.)  The ALJ did not find that plaintiff is malingering.  Therefore, the analysis moves to a credibility determination.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms.  The Commissioner can reject a claimant's symptom testimony only if she makes specific

findings, stating clear and convincing reasons for doing so.  Dodrill v. Shalala, 12 F.3d 915,

918 (9th Cir. 1993); Smolen, 80 F.3d at 1281-82.  General findings are insufficient; rather,

the ALJ must identify what testimony is not credible, and what evidence suggests that the

testimony is not credible.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The

Commissioner cannot reject a claimant's symptom testimony solely because it is not fully

corroborated by objective medical findings.  Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

> Here, the ALJ found that plaintiff's allegations regarding his limitations were not

totally credible.  In his decision, the ALJ set forth plaintiff's testimony.  The ALJ then

stated:

> In general, the record does not provide substantial support for the allegations and testimony of either the claimant or his witness.  A statement of his testimony provides a clear example of the discrepancies from both parties.  Both the claimant and his witness maintain that he is anti-social, avoids contact with others, and is uncomfortable around other people due to alleged PTSD symptoms.  Furthermore, both contend that he has worsened. However, at the October 20, 2004, hearing that he last used marijuana 3

months before [sic].   In his testimony, he explained that he used the marijuana at a party.  Therefore, to begin, disability is being claimed by an individual who alleges avoiding interaction with others because it is so highly disturbing to him, attending a party.

(Tr. 17-18.)   The fact that plaintiff attended one party has little overall relevance to plaintiff's credibility and whether he is disabled.  The Ninth Circuit recognizes that a party claiming disability "should not be penalized for attempting to lead normal lives in the face of their limitations."  Reddick, 157 F.3d at 722 (and cases cited).  The Ninth Circuit has stated that, "'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'"  Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir.1987) (quoting Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)).  It is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility.  Reddick, 157 F.3d at 722.  Attendance at one party by a claimant who claims that he avoids contact with other people does not rise to this level.

The Commissioner refers to various reasons which he argues supports the ALJ's decision.  However, while some of these areas might have been referenced in the ALJ's decision, they were not linked to any finding that plaintiff was not credible.  This includes the Commissioner's assertion that the ALJ found that the medical record and evidence reflected significant substance abuse, embellishment, misinformation regarding polysubstance abuse, and financial disincentive to work.  This statement by the ALJ follows his recounting of the medical evidence and prefaces his finding of plaintiff's residual functional capacity.  The statement refers to the medical records; there is no link to a

finding that plaintiff's testimony is not credible and is, at best, ambiguous as it relates to any discounting of plaintiff's credibility.

On this record, the Court finds that the ALJ did not provide specific, and clear and convincing reasons for finding that plaintiff's allegations and testimony were not entirely credible and, therefore, the ALJ erred.

**Lay witness testimony**

Plaintiff contends that the ALJ improperly rejected the testimony of Tracy Martinez for the same invalid reason as he rejected his own testimony. Defendant responds that the ALJ properly considered Ms. Martinez's testimony.

An ALJ must consider the testimony of friends and family members. Smolen, 80 F.3d at 1288. To disregard such testimony violates 20 C.F.R. §§ 404.1513(e)(2), 416.913(e)(2), which mandates consideration of observations by non-medical sources regarding how an impairment affects a claimant's ability to work. The Ninth Circuit has recently addressed what an ALJ must do with lay witness testimony:

> In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give good reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Lewis v. Apfel, 236 F.3d 503, 511 [9th Cir. 2001] ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288.

Here, the ALJ discounted Ms. Martinez's testimony for the same reason that he discounted plaintiff's testimony: plaintiff testified that he had gone to a party three months before, see supra, which the ALJ found was a "discrepanc[y]" from her observation that plaintiff is antisocial and avoids contact with others. (Tr. 17.) This reason advanced by the ALJ is based on the credibility of plaintiff–it is not a reason germane to Ms. Martinez. Accordingly, on this record, the Court finds that the ALJ erred when he failed to properly discount the observations of plaintiff's lay witness, Ms. Martinez.

## Conclusion

The Court has found that the ALJ erred in not giving the VA rating decision the weight to which it is entitled; by failing to properly consider the opinions of examining doctors; and by failing to give proper reasons for discounting plaintiff's testimony and that of plaintiff's lay witness. Because of these errors, the hypothetical posed by the ALJ to the vocational expert was based upon an incomplete RFC and is not supported by substantial evidence. The ALJ may not rely upon unsupported vocational testimony. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Therefore, the Commissioner's decision must be reversed.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)). Remand is appropriate where further proceedings would be likely to clear up defects in the administrative

proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 976 (9th Cir. 2000).

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony.  See Smolen, 80 F.3d at 1292 (claimant's subjective symptom testimony, physicians' opinions, and lay testimony) (and cases cited); Lester, 81 F.3d at 834 (treating and examining physicians' opinions). However, in Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "crediting as true" doctrine is not mandatory and the court has some flexibility in applying the doctrine.  (Citing Dodrill, 12 F.3d 915; Nguyen, 100 F.3d 1462; Byrnes v. Shalala, 60 F.3d 639 (9th Cir. 1995); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991), in which the courts remanded for credibility findings).

On this record, the Court exercises its discretion and remands for further proceedings.  See Stout, 454 F.3d at 1053-54, 1056-57 (remanding for further proceedings despite vocational expert testimony that constant supervision is unacceptable in competitive employment); Connett, 340 F.3d at 876.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded

for further administrative proceedings consistent with the Court's Order, and that judgment be entered accordingly.

<u>This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals</u>. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. <u>Objections to this Report and Recommendation, if any, are due by August 10, 2007. If objections are filed, any responses to the objections are due 14 days after the objections are filed</u>. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __26____ day of July, 2007.


_____/s/_____
MARK D. CLARKE
United States Magistrate Judge

27 - REPORT AND RECOMMENDATION